**David T. MASON, Plaintiff-Appellee,**

v.

**Francis D. DeGEORGE et al., Defendants-Appellants.**

**No. 73–1676.**

United States Court of Appeals, Fourth Circuit.

Argued July 16, 1973.

Decided Aug. 13, 1973.

Joseph B. Scott, Atty., U. S. Dept. of Justice (Harlington Wood, Jr., Asst. Atty. Gen., George Beall, U. S. Atty., Leonard Schaitman, Atty., U. S Dept. of Justice, Joel Cohen, Sarah Wilcox, Attys., Dept. of Health, Education and Welfare, on brief), for defendants-appellants.

Joel J. Rabin and Diana G. Motz, Asst. Attys. Gen. of Md. (Francis B. Burch, Atty. Gen. of Md., Henry R. Lord, Deputy Atty. Gen. of Md., Judson P. Garrett, Jr., Asst. Atty. Gen. of Md., on brief) for plaintiff-appellee.

Before CRAVEN, BUTZNER and RUSSELL, Circuit Judges.

PER CURIAM:

This appeal challenges the granting by the District Court of Maryland of an interlocutory injunction, under which the responsible officers of the Department of Health, Education and Welfare (hereafter referred to as HEW) were enjoined "from failing to provide funds to the Maryland State Department of Employment and Social Services sufficient to fund the public assistance programs administered by the Department of Employment and Social Services under Titles IV and XVI of the Social Security Act as amended, for the fourth quarter of fiscal year 1973. In computing the amount of funds, the defendants shall proceed as if the $24,682,831.00 drawn by the State of Maryland on March 19, 1973, had been paid to cover the fourth quarter Fiscal Year 1972 and the first quarter Fiscal Year 1973 for certain social services and such amount will not be offset in any way against monies otherwise due Maryland in the fourth quarter Fiscal Year 1973 or any future quarter * * *."

The action concerns the method established by HEW to make available to the States the federal grants available to participating States under the provisions of the co-operative federal-state welfare programs created under Titles IV and XVI of the Social Security Act.[1] These federal grants are based on a percentage of state expenditures, as authorized under the Act. The procedure under which these grants are made available to the participating state is carefully spelt out both in Sections 603(b) and 1383(b), as supplemented or implemented in 45 C.F.R. § 201.5. Forty-five days before the beginning of each quarter, the state submits to HEW its estimate, supported by such data as may be appropriate, of the total sum to be expended by the state under the programs for that quarter. HEW reviews that estimate and then certifies to the Secretary of the Treasury the amount it estimates to be the federal share, based on (A) the State's statement of its estimated expenditures and the amounts and sources of the State's share of those expenditures, (B) records showing the number of recipients under the programs in the state and (C) "such other investigation as the Secretary may find necessary", *reduced or increased, however, to the extent that the estimate for any prior quarter was greater or lesser than the amount estimated to be proper for the quarter under review.* The Secretary of the Treasury thereupon issues a letter of credit in the amount so certified to him by HEW, against which the state can draw funds as needed. The District Court, in reviewing this procedure, correctly emphasized that the letter of credit did "not itself constitute a grant, but merely constitute(s) the payment system." Moreover, as the District Court properly construed the procedure a letter of credit may not be drawn against for any purpose not in the award grant against which the specific letter of credit was issued. At the end of the quarter for which an award has been made and a letter of credit is issued, the state reports to HEW its actual expenditures under the award and this provides the mechanism whereby HEW can adjust its award for the next quarter by either increasing or lessening to the extent there was either a deficit or surplus in the earlier amount awarded. The system thus established serves the interests both of the participating states and of the federal government. On the one hand, it provides a means whereby the federal government promptly makes available to the states the federal contribution and, on the other hand, it protects the federal government from

1. *See* 42 U.S.C. §§ 603(b), 1383(b) (1970).

over-funding state programs, an important consideration in the light of the present cost of federal borrowings.

The dispute between the parties arises out of the grant award made by HEW in favor of the State of Maryland on account of estimated expenditures for the second quarter of fiscal year 1973 (*i. e.,* October through December, 1972). Because of a considerable expansion expected in the State's programs for that quarter, a grant award in the amount of $38 million was made for the State of Maryland and a letter of credit was duly issued in favor of the State for that amount. The expected expansion did not occur; and, following the established procedure, Maryland in February, 1973, submitted its statement of expenditures made during the second quarter of fiscal year 1973. This report indicated that the federal share of such expenditures was approximately $6 million. When HEW prepared its grant award for the fourth quarter of fiscal year 1973 (i. e., April through June, 1973), it proceeded in accordance with its statutory duty to "reduce" by the amount of the unused second-quarter award (*i. e.,* $32 million) the estimated $6 million federal share of expenditures for the fourth quarter. This resulted in a "negative grant award" of $26 million. It is, however, the contention of the State of Maryland that, during the third quarter of fiscal year 1973, an official of the State telephoned an officer in HEW, requesting an increase in Maryland's letter of credit to cover the federal share in additional expenditures in the approximate amount of $25 million, claimed by the State to have been made under its public assistance programs in the fourth quarter of fiscal year 1972 and first quarter 1973, for which there had been no awards theretofore requested, reviewed by HEW or granted by HEW. The officer of HEW, it seems, increased the letter of credit as requested, despite the absence of any award. Funds as covered by this increased letter of credit were received by the State. According to the contention of HEW, on the other hand, this payment made on account of expenditures for which it asserts no valid award had been made was improper. Until there had been an award made by HEW, on the basis of a review of the State's application for a supplemental award for these additional expenditures in earlier quarters, the State, according to HEW's argument, was never legally entitled to be reimbursed for such claimed expenditures, made in earlier quarters, out of funds awarded exclusively for expenditures incurred in the third quarter of fiscal year 1973. Accordingly, the "negative award," which eliminated any right of the State to an award for fourth quarter 1973, was, in the view of HEW, entirely proper and in keeping both with statutory authority and with valid departmental regulation. The State, however, urges that the increase in the letter of credit, authorized by telephone by an employee of HEW, operated as a supplemental award, even though the expenditures had not been reviewed by the proper division of HEW. For this reason, the State takes the position the "negative award" was improper.[2] In keeping with this contention, the State brought this action to void this "negative award" and to require HEW to make awards for expenditures estimated for fourth quarter, fiscal year 1973, and subsequent quarters, without reduction on account of such "negative award." And, asserting irreparable injury, the State requested interlocutory relief, contending that unless such relief was granted, the entire public assistance programs of the State would be put in jeopardy, a "fiscal crisis" could be generated, and "the needy residents of the State who are recipients of its public assistance programs are likely to suffer irreparable injury." Applying the three-pronged test established by this Court in Long v. Robinson

2. It was stated in oral argument in this Court that the State has filed an application for a supplemental award on account of these earlier expenditures and such application for a supplemental award is apparently under review now in HEW.

(4th Cir. 1970) 432 F.2d 977, 979, the District Court granted an interlocutory injunction and the defendants have appealed under the authority of Section 1292, 28 U.S.C. We reverse and vacate the order of the District Court granting an interlocutory injunction.

 An essential basis for a grant of an interlocutory injunction is a showing of irreparable harm. At the hearing in this Court, it was stated that the sums drawn by the State under the disputed letter of credit to meet expenditures made in the earlier quarters had not been paid out but were being kept in hand awaiting the disposition of this case. While this action is before the Court, such sums can be used by the State to cover any current or future awards, not covered by the issuance of contemporary letters of credit, until the "negative award" has been exhausted. In fact, that was the very purpose and effect of the "negative award." Payment from such fund to meet, in whole or in part, future federal contribution is perfectly legitimate. The only inconvenience that the State may suffer from following such procedure is that it will be delayed in obtaining reimbursement for sums which it claims it was entitled to in fourth quarter of fiscal year 1972, April through June, 1972, and first quarter of fiscal year 1973, July through September, 1972, which it had previously not included in its statement of expenditures as filed by it in the regular course at the end of such quarters. This may be inconvenient but it represents no threat to either the current or future operations of its public assistance programs. But this inconvenience is attributable, in large part at least, to the fact that, when it submitted its statement of expenditures for the fourth quarter of fiscal year 1972 and the first quarter of fiscal year 1973, the State ne- glected to include such expenditures and is, therefore, in the position of being required to file a request for supplemental award to cover them. Clearly, the current operations of the State's public assistance programs are not threatened by the failure of HEW to reimburse it for these past payments.[3] The finding of irreparable harm was, in view of admissions made by the State in hearing before this Court, clearly erroneous. It is unnecessary for us to consider at this time the additional point made by HEW that the finding by the District Court that there is a reasonable likelihood that the State will prevail on the merits is likewise erroneous, though we might add that the issues between the parties seem more complex to us than apparently they did to the District Court.

Interlocutory Injunction vacated and cause remanded to the District Court for further proceedings.

---

3. HEW indicated during argument that the State's application for a supplemental award was being reviewed. It is hoped that such review may be expedited and HEW may make whatever is a proper certification in favor of the State on ac- count of this application promptly, thereby eliminating this controversy between state and federal government and relieving the courts of any responsibility in this situation.