UNITED STATES of America
(Plaintiff in D.C.)

v.

COMMONWEALTH OF PENNSYLVA-NIA et al. (Defendants in D.C.)

Milton J. SHAPP, Governor, et al. (Plaintiffs to Counterclaim in D.C.)

v.

UNITED STATES of America et al. (Defendants to Counterclaim in D.C.)

Commonwealth of Pennsylvania et al. (Plaintiffs to Counterclaim in D.C.), Appellants.

No. 75–2145.

United States Court of Appeals,
Third Circuit.

Argued Feb. 24, 1976.

Decided March 26, 1976.

Lawrence Silver, J. Justin Blewitt, Howard M. Snyder, Commonwealth of Pennsylvania, Dept. of Justice, Harrisburg, Pa., for counterclaim plaintiffs-appellants.

J. Stanley Pottinger, Louis M. Thrasher, Daniel F. Rinzel, Susan L. Lentz, Civil Rights Div., Dept. of Justice, Washington, D. C., for counterclaim defendants-appellees.

Before ADAMS, HUNTER and GARTH, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

■ We review on this appeal the district court's denial of a preliminary injunction sought by certain officials of the Commonwealth of Pennsylvania to enjoin and restrain the United States from withholding federal funds allegedly due the Commonwealth. Our review of a grant or denial of a preliminary injunction is limited to determining whether there has been an abuse of discretion, an error of law or a clear mistake in the consideration of the proof. *National Land & Investment Co. v. Specter*, 428 F.2d 91, 95 (3d Cir. 1970). We find no abuse, error or mistake, and, accordingly, affirm.

This action was originally commenced on October 11, 1974 by the United States against the Commonwealth of Pennsylvania and various of its officials, including the Governor, (the "Officials"). In its complaint, the United States alleged that the Commonwealth and the Officials had failed to carry out their supervisory obligations under federal Medicaid[1] and Medicare[2] programs with respect to surveying and certifying private skilled nursing facilities for compliance with federal fire-safety guidelines.[3] The complaint sought an order in the nature of a mandamus to compel the Commonwealth and the Officials to perform their obligations under the federal programs.

1. 42 U.S.C. § 1396 *et seq.*

2. 42 U.S.C. § 1395 *et seq.*

3. Both the Medicare and Medicaid programs require participating states to insure that nursing facilities receiving federal funds under these programs comply with the standards of the Life Safety Code of the National Fire Protection Association (21st ed. 1967). 42 U.S.C. §§ 1395x(j)(13), 1396a(a)(28)(F)(i). The Life Safety Code, *inter alia*, prescribes requirements relating to sprinkler systems, fire alarms, hallway and door widths and accessibility of emergency exits.

On November 1, 1974, the Commonwealth and the Officials filed an answer to the complaint, and the Officials, but not the Commonwealth, asserted a counterclaim seeking to compel the United States, the Secretary of the Department of Health, Education and Welfare ("HEW") and various other federal officials to cease withholding federal funds that the Officials alleged were due the Commonwealth under the Medicaid program. HEW had first deferred and later "disallowed" approximately $12 million in claims for federal financial participation in payments made by the Commonwealth to certain private skilled nursing facilities [4] because, according to HEW, at the time payments were made the facilities lacked valid current provider agreements due to their noncompliance with the Life Safety Code.[5] The Officials asserted that the withholding of these funds was improper because HEW had approved or acquiesced in "interim provider agreements" in which the Commonwealth sought to bring these facilities into compliance with the fire-safety requirements and, alternatively, because the funds had been withheld without prior notice and a "conformity hearing" as required by 42 U.S.C. § 1396c.[6]

4. The counterclaim only requested release of Medicaid funds withheld during the period of September 1973 through March 1974—a sum of $12,687,974. App. at 37a–38a, 234a. However at the hearing on the motion for a preliminary injunction, the Officials sought also to include in their prayer for relief approximately $3 million of Medicaid funds withheld in fiscal year 1975. The district court, over the objection of counterclaim defendants, permitted evidence concerning the fiscal year 1975 withholding, id. at 189a, and in its opinion denying the injunction, the court stated that the "requested injunction would compel the payment of approximately $15 million . . . ." Id. at 279a. Because of our disposition of this appeal, we need not decide whether the counterclaim involves $12,687,974, as the United States contends, or $15,027,000, as the Officials assert.

5. Payment of federal funds under the Medicaid program is made for each quarter of the fiscal year prior to the time expenses are incurred. The payments are based on an estimate by the state of its medical assistance expenses for the coming quarter, which is submitted to HEW some 45 days in advance of the beginning of the quarter. 42 U.S.C. § 1396b(d)(1). Based on this estimate, the Secretary of HEW estimates the amount of federal financial participation for the quarter and advances to the state the amount so estimated, reduced or increased to the extent of any overpayment or underpayment which was made in a prior quarter. Id. § 1396b(d)(2). After the end of each quarter, the state is required to submit to HEW a statement of expenditures for the quarter. Thus, because of the way in which funds under the Medicaid program are distributed, HEW had already reimbursed the Commonwealth for its expenses incurred during the period between September 1973 and March 1974 and the $12,-687,974 was withheld from payments due the Commonwealth in quarters subsequent to March 1974.

6. Section 1396c provides:

If the Secretary, *after reasonable notice and opportunity for hearing to the State agency administering or supervising the administration of the State plan approved under this subchapter,* finds—
(1) that the plan has been so changed that it no longer complies with the provisions of section 1396a of this title; or
(2) that in the administration of the plan there is a failure to comply substantially with any such provision;
the Secretary shall notify such State agency that further payments will not be made to the State (or, in his discretion, that payments will be limited to categories under or parts of the State plan not affected by such failure), until the Secretary is satisfied that there will no longer be any such failure to comply. Until he is so satisfied he shall make no further payments to such State (or shall limit payments to categories under or parts of the State plan not affected by such failure). (emphasis added).

The counterclaim defendants contend that the funds were not withheld under section 1396c but rather were "disallowed" pursuant to section 1396b(d)(2), which does not require notice and an opportunity for a hearing. Section 1396b(d)(2) provides that after the state has submitted an estimate of expenses for the coming quarter, the

Secretary shall then pay to the State, in such installments as he may determine, the amount so estimated, *reduced or increased to the extent of any overpayment or underpayment which the Secretary determines was made under this section to such State for any prior quarter* and with respect to which adjustment has not already been made under this subsection. (emphasis added).

The counterclaim defendants assert that the administrative remedy provided for a disallowance under section 1396b(d)(2) is a reconsideration. 42 U.S.C. § 1316(d); 45 C.F.R. § 201.14.

On June 5, 1975, the Officials filed a motion for a preliminary injunction seeking to enjoin the counterclaim defendants from withholding the Medicaid funds. On August 12, 1975, the district court denied the motion for preliminary injunctive relief. After reviewing the elements necessary for the issuance of a preliminary injunction, the court concluded that even accepting *arguendo* the testimony and evidence presented by the Officials, it was insufficient to establish a likelihood of success on the merits. In the court's opinion, the Officials failed "to submit any evidence or convincing legal argument that there exists a clear duty on the part of the counterclaim defendants to release the funds (or to have conducted a hearing prior to the withholding)." App. at 280a.

■ While we agree that the motion for a preliminary injunction was properly denied, and hence affirm, we do so for a reason other than that relied on by the district court.[7] In our opinion, the Officials failed to demonstrate irreparable injury *pendente lite* absent the injunction. We neither reach, nor express an opinion on, the question whether the Officials demonstrate a reasonable probability of succeeding on the merits of their claim that the counterclaim defendants wrongfully withheld Medicaid funds from the Commonwealth.[8]

■ We have often emphasized that an essential prerequisite to the grant of a preliminary injunction is a showing by the movant of irreparable injury *pendente lite* if the relief is not granted. *E. g., Ammond v. McGahn,* 532 F.2d 325 (3d Cir. filed Mar. 11, 1976); *A. O. Smith Corp. v. FTC,* 530 F.2d 515 (3d Cir. filed Feb. 11, 1976); *Oburn v. Shapp,* 521 F.2d 142, 147, 150–51 (3d Cir. 1975); *Delaware River Port Authority v. Transamerican Trailer Transport, Inc.,* 501 F.2d 917, 919–20 (3d Cir. 1974); *Croskey Street Concerned Citizens v. Romney,* 459 F.2d 109, 112 (3d Cir. 1972) (Aldisert, J., concurring). The key aspect of this prerequisite is proof that the feared injury is irreparable; mere injury, even if serious or substantial, is not sufficient. *A. O. Smith Corp. v. FTC, supra.*[9]

■ Although the Officials have alleged injury resulting from the withholding, we are not satisfied that the alleged injury is irreparable.[10] Testimony at the hearing on

The Commonwealth is currently pursuing reconsideration although it argues that the Secretary's action was not a disallowance and that the remedy of reconsideration is inadequate.

7. It is well settled that an appellate court may uphold a judgment of a lower court on any theory which finds support in the record and may affirm the decision of a lower court if the result is correct even though the lower court relied on a different, and even a wrong, reason. *Helvering v. Gowran,* 302 U.S. 238, 245–46, 58 S.Ct. 154, 82 L.Ed. 224 (1937); *Tunnell v. Wiley,* 514 F.2d 971, 975 & n.4 (3d Cir. 1975); *Jurinko v. Edwin L. Wiegand Co.,* 477 F.2d 1038, 1045 (3d Cir.), *judgment vacated on other grounds,* 414 U.S. 970, 94 S.Ct. 293, 38 L.Ed.2d 214 (1973); *Picture Music, Inc. v. Bourne, Inc.,* 457 F.2d 1213, 1215 & n.5 (2d Cir. 1972).

8. Thus, we need not decide the question presented by the Officials on appeal that the district court, in evaluating the likelihood of success on the merits, committed an error of law by requiring them to meet the strict standards requisite to mandamus relief. Brief for Plaintiffs to the Counterclaim at 5–7.

9. In a classic discussion of the requirement of irreparable injury, the District of Columbia Circuit has stated:

The key word in this consideration is *irreparable.* Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Virginia Petroleum Jobbers Ass'n v. FPC,* 104 U.S.App.D.C. 106, 259 F.2d 921, 925 (1958) (emphasis in original), *quoted with approval in Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 952, 39 L.Ed.2d 166, 186 (1974).

10. While the Officials, and not the Commonwealth, instituted the counterclaim, we, of course, recognize that any injury that resulted from the withholding was suffered by the Commonwealth, and perhaps the nursing home facilities and their patients, and not by the Officials themselves.

Although the United States contends that the counterclaimant officials lack standing, that issue was not decided by the district court. In light of our decision, we find no occasion to

the motion for the preliminary injunction established that the nursing facilities in question were fully reimbursed by the Commonwealth for the claims involved and that the Commonwealth continues to receive federal financial participation in payments made to eligible skilled nursing facilities. App. at 192a–93a. The Commonwealth was deprived of a certain amount of funds ($12,-687,974 or $15,027,000) which it would have had but for the withholding. However, that loss of a discrete amount of funds in an earlier fiscal year does not rise to the level of *irreparable* injury.[11] If the Officials eventually succeed on their counterclaim, an order mandating the release of the withheld funds would result in the Commonwealth obtaining monies in an ascertainable amount.

The Officials contend that the withholding has made it impossible for the Commonwealth to consider an increase in the rate of payment to providers of nursing home care. There was testimony that the current rate of payment by the Commonwealth ($20 per diem) is inadequate to meet the actual costs of nursing home care and that the effect of this inadequate rate of payment is to limit the opportunity of persons eligible for medical assistance to receive such care in private facilities. App. at 190a, 191a. In addition, there was testimony that the release of the funds in question "could conceivably" result in an increase in the rate to as much as $26 per diem. *Id.* at 192a.

While we are not insensitive to the plight of private nursing facilities in Pennsylvania and of the Medicaid patients who seek nursing home care in these facilities, it is our view that any effect which the withholding in question has on the Commonwealth's ability to raise its reimbursement rates does not constitute irreparable injury. Under the Medicaid program a state is free to raise its rate of reimbursement to any level it desires; the federal government must then contribute matching funds on all valid expenditures. *Id.* at 218a. There was no evidence that the federal government would refuse to match an increase in reimbursement by the Commonwealth. Further, even if the counterclaim defendants did immediately release the monies in question it would only temporarily increase Pennsylvania's revenue while any meaningful and continuing increase in the reimbursement rate to nursing homes would require a longer term commitment of funds by the Commonwealth.[12]

Thus, for the reasons set forth above, the order of the district court denying the motion of the counterclaim plaintiffs for a preliminary injunction will be affirmed.

---

address that issue, particularly since the district court has not as yet ruled upon it.

11. *See Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937, 952, 39 L.Ed.2d 166, 186 (1974); *Oburn v. Shapp*, 521 F.2d 142, 151 (3d Cir. 1975); *Mason v. DeGeorge*, 483 F.2d 521, 524 (4th Cir. 1973); *Graham v. Triangle Publications, Inc.*, 344 F.2d 775, 776 (3d Cir. 1965).

12. At oral argument, counsel for the counterclaim plaintiffs asserted for the first time that the operation of the disallowance procedure itself, *see* notes 5 & 6 *supra,* creates irreparable injury to the Commonwealth. They argued that the Commonwealth cannot adequately plan its welfare budget since at any time and without prior notice HEW can decide to disallow certain of the Commonwealth's claims. However, the Officials' counterclaim and motion for a preliminary injunction did not challenge the entire disallowance mechanism but rather sought only to recoup a discrete amount of Medicaid funds withheld in prior years. As we have stated, that withholding does not constitute irreparable injury, and we express no view as to the propriety of the disallowance procedure in general.