**Charles E. HARTZ, II**

v.

**Peter BENSINGER, National Director, Drug Enforcement Agency and Donald Kennedy, Commissioner, Food/Drug Administration and Griffin Bell, Attorney General.**

**Civ. A. No. 78–3159.**

**United States District Court, E. D. Pennsylvania.**

**Oct. 4, 1978.**

**432**

Hy Mayerson, Spring City, Pa., for plaintiff.

Robert S. Forster, Asst. U. S. Atty., Philadelphia, Pa., Barbara L. Ward and Brian Smiley, Dept. of Justice, Robert Dormer, Food & Drug Administration, Washington, D. C., for defendants.

## MEMORANDUM

POLLAK, District Judge.

On Tuesday, October 3, a conference was held in chambers to consider the motion for a temporary restraining order filed by plaintiff on September 29, 1978. At the conference, plaintiff was presented by Hy Mayerson, Esq., and defendants were represented by Robert S. Forster, Esq., Assistant United States Attorney, Barbara Ward, Esq. and Brian Smiley, Esq. of the Department of Justice, and Robert Dormer, Esq. of the Food and Drug Administration.

The principal relief sought in the motion for a temporary restraining order is an order requiring the defendants to release three marijuana cigarettes daily to plaintiff, as medication to be taken under the supervision of plaintiff's treating physician, Dr. Frank A. Elliott of Pennsylvania Hospital, emeritus Professor of Neurology at the University of Pennsylvania. Plaintiff suffers from a brain tumor. He is being treated by chemotherapy. According to the affidavit of Dr. Elliott, filed in support of plaintiff's application for temporary relief, marijuana is of great value to plaintiff in mitigating the effects of the chemotherapy and in other ways ameliorating symptoms of the disease in that it (1) controls plaintiff's severe headaches, aggressive impulses and debilitating nausea, and (2) promotes plaintiff's appetite.

Plaintiff's legal position, most broadly stated, appears to be that the unrestricted use of marijuana is every person's constitutional birthright. Alternatively (and more modestly, and with somewhat more support in the current case law), plaintiff argues his entitlement as a patient to receive medication certified by his treating physician to be of significant therapeutic value. Plaintiff's legal position may also turn out to have an additional aspect—but one which is not yet quite in focus at the current stage of the pleadings as amplified by the conference: It appears that the Food and Drug Administration has authorized the administration of marijuana to glaucoma and cancer patients in certain instances in which such treatment was part of a research program approved by the Food and Drug Administration. Mr. Mayerson, counsel for plaintiff, stated at the conference that Dr. Elliott, plaintiff's treating physician, is will-

ing to apply to the Food and Drug Administration for approval of a research program pursuant to which plaintiff might receive marijuana under authorization of the Food and Drug Administration (a matter not dealt with in Dr. Elliott's affidavit). But Mr. Mayerson added that to prepare and pursue such an application would be a very complex and lengthy matter with ultimate administrative approval unlikely. However that may be, Dr. Elliott has not yet made any such application; nor does the current record demonstrate (or conversely, give ground for doubt) that Mr. Mayerson has authority to speak for Dr. Elliott in this regard.[1]

I conclude that issuance of a temporary restraining order (which in this instance would be mandatory in character, requiring defendants to extend to plaintiff affirmative relief) would be unwarranted at this time for the following reasons:

1. The immediate line of march of plaintiff's legal position is somewhat obscure, so that I have no confident sense of the nexus between the requested temporary relief and the factual and legal issues which would be pivotal at a hearing on a motion for a preliminary injunction. To the extent that plaintiff, stricken with so dread a form of cancer, is asserting a constitutional right to treatment, free of governmental impedi-

ment, with whatever medication may be prescribed by the specialist who is his treating physician, plaintiff's claim is clearly a substantial one which commands respectful attention. But to say this is not to say that plaintiff's constitutional claim is one which will, more probably than not, prevail; the cases from *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) forward do not, so it seems to me, point unerringly, or even predominantly, in plaintiff's favor (nor are they, I think, clearly opposed).[2]

2. Plaintiff's counsel acknowledges that plaintiff is currently able to keep the besetting symptoms under substantial control through the administration of marijuana which he now has on hand, wherefor I see no persuasive case that he requires defendants to release daily dosages of marijuana to him forthwith.

Accordingly, in an accompanying order, I am denying plaintiff's motion for a temporary restraining order.

---

1. At the conference, counsel for defendants were commendably forthcoming with respect to steps which might be taken to expedite possible administrative remedies for this very difficult situation. Specifically, Mr. Dormer of the Food and Drug Administration agreed to acquaint Dr. Elliott (and/or Mr. Mayerson, if he is to represent Dr. Elliott) with the procedures governing a research application of the sort under discussion; also, Mr. Dormer indicated that such applications are sought to be dealt with reasonably expeditiously by the Food and Drug Administration. In addition, Mr. Dormer agreed to discuss with Mr. Mayerson the possibility that plaintiff might be included within the treatment framework of an application now pending before the Food and Drug Administration submitted by another Philadelphia physician who wishes to do research on the use of marijuana to counter nausea among cancer patients undergoing chemotherapy.

2. If there were pending before the Food and Drug Administration a research application by

plaintiff's physician, which, if approved, would authorize the therapeutic regimen plaintiff desires, the case for temporary judicial intervention might be thought stronger than the case as it now stands, where no move has been made to invoke a possible administrative remedy. On the other hand, the availability and pursuit of an administrative pathway might be taken to count against the propriety of judicial action in anticipation of the administrative process, cf. *Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), or might mean that standing to seek anticipatory judicial relief was primarily the physician-applicant's and only secondarily the patient's, as against those situations in which physician and patient have independent standing. Compare *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), with *Roe v. Wade, supra*. But as of now, in any event, no application is pending before the Food and Drug Administration.