**McDERMOTT INCORPORATED,**
**Plaintiff–Appellee,**

v.

**WHEELABRATOR–FRYE, INC.,**
**Defendant–Appellant,**

**Pullman Incorporated, Defendant.**

No. 80–2306.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 23, 1980.
Decided Sept. 25, 1980.*

---

\* This appeal was originally decided by unreported order on September 25, 1980. See Circuit Rule 35. The Court has subsequently decided to issue the decision as an opinion.

Robert F. Hanley, Jenner & Block, Chicago, Ill., Robert B. von Mehren, New York City, for defendant–appellant.

John W. Barnum, White & Case, New York City, for plaintiff–appellee.

Before FAIRCHILD, Chief Judge, and SWYGERT and PELL, Circuit Judges.

FAIRCHILD and SWYGERT, Circuit Judges.

Defendant–appellant, Wheelabrator–Frye, Inc. ("Wheelabrator"), and plaintiff–appellee, McDermott, Inc. ("McDermott"), are engaged in rival tender offers for ownership and control of Pullman Incorporated ("Pullman"). All three are large, highly diversified corporations. Late in the afternoon of September 19, 1980, McDermott moved in the district court for a temporary restraining order alleging that Wheelabrator had violated certain provisions of the Williams Act, 15 U.S.C. §§ 78m(d)–(e), 78n(d)–(f), and regulations promulgated thereunder, 17 C.F.R. §§ 240.14d–1 et seq., by increasing the number of Pullman shares it was seeking, without extending the closing date for its tender offer, which was due to expire that midnight. The district court granted McDermott's motion that evening,

and ordered Wheelabrator to extend its tender offer until midnight, October 17, 1980 and to provide Pullman shareholders who had already tendered their shares the right to withdraw their shares within 15 business days of September 15, 1980. For reasons hereinafter stated, we vacate the district court's order entered September 19, 1980.

For the purposes of this appeal it is sufficient to note the following facts. McDermott began a hostile tender offer for Pullman on July 3, 1980.[1] On August 22, 1980, Wheelabrator began a rival tender offer with the announced purpose of effecting a merger between it and Pullman. Pullman management welcomed this second offer. During the following weeks, McDermott, Wheelabrator and Pullman engaged in a series of maneuvers now typical of tender offer strategy and defense. Pullman has about 11,150,000 shares outstanding which are listed on the New York Stock Exchange.

As of 7 a. m., Chicago time, September 19, 1980, Wheelabrator's tender offer was to purchase 3,000,000 shares of Pullman at $52.50 per share, reserving the right to purchase an additional 1,000,000 shares. This offer was due to expire at midnight, New York time, September 19. If the offer was successful in the second–stage merger, non–tendering Pullman shareholders were to receive 1.1 Wheelabrator shares for each Pullman share. Some 1,000,000 Pullman shares had been tendered under this Wheelabrator offer.

Also on the morning of September 19, McDermott's tender offer was to purchase 5,400,000 shares of Pullman at $43.50 per share. The McDermott offer was due to expire at midnight, New York time, September 26. McDermott's announced intention was also to seek a business combination between it and Pullman. McDermott had not yet specified what consideration it would offer to the remaining Pullman

1. An appeal arising out of that offer, No. 80–2071, was decided September 24, 1980, 631 F.2d 736.

shareholders in the second stage of their acquisition of Pullman. As of that morning, some 3,882,000 shares had been tendered to McDermott.

On Friday morning, between 7:45 and 8:40, Chicago time, Wheelabrator announced it was increasing the number of securities it was seeking to 5,500,000. Its press announcement stated that no other terms and conditions of its offer were being changed. Between the time this announcement was made until 2:00 p. m., Chicago time, the number of shares tendered to Wheelabrator did not significantly change, in all likelihood because the arbitrageurs who were holding a majority of the outstanding Pullman shares were waiting for an increased bid expected from McDermott. There was no appreciable reaction to the Wheelabrator announcement on the New York Stock Exchange.

Shortly after 2:00 p. m., Chicago time, McDermott announced that it was increasing its offer to $54 a share and that in the second stage combination, non–tendering Pullman shareholders would receive securities valued at about $39 a share. This offer was extended to September 29. Paradoxically, by midnight, New York time, Friday, September 19, Wheelabrator's offer was in fact oversubscribed: some 7,300,000 shares had been irrevocably tendered, although Wheelabrator was only seeking 5,500,000. Nearly all of the shares provisionally tendered to McDermott had been withdrawn. Had the district court not intervened, Wheelabrator's tender offer would have been successful; it would have been able to purchase up to 5,500,000 shares and its 49 percent stake in Pullman would have conferred effective control on Wheelabrator.

However, at 4:15 p. m., Chicago time, September 19, after McDermott increased its offer to $54.00 and while shareholders were nevertheless tendering to Wheelabrator, McDermott appeared before the district court seeking a restraining order against Wheelabrator's closing offer. During an extended hearing lasting past 8:00 p. m., McDermott argued that the increase in the amount of securities being sought constituted such a material change in the offer that it was in effect a new tender offer and required an additional time extension. The district court agreed, stating:

It seems that the withdrawal period was more than the 10–day period so the consequence of my finding has to be that Wheelabrator is obligated to hold the offer open 20 business days because it is a *new offer* with 15 business days to withdraw.

During its consideration of the time extension required, the district court discussed several alternative periods of time during which Wheelabrator would be compelled to keep this new offer open, but ultimately concluded that the tender offer rules, 17 C.F.R. § 240.14d–1(a), required a full 20 day extension.

In making this determination the district court had before it its own September 3, 1980 order in the related case *Pullman Incorporated v. J. Ray McDermott, Inc.*, No. 80–C–3555.[2] There the district court found that McDermott's August 29, 1980, modification of its tender offer constituted a new tender offer and mandated the triggering of a complete 20 day tender offer period.[3]

With this previous order before it, the district court on September 19 granted a temporary restraining order, ordering that the Wheelabrator tender offer be extended 20 days, until October 17, and that shareholders withdrawal rights be extended 15 days.[4]

2. Another order in 80–C–3555 was appealed in No. 80–2071, *supra* note 1. The district court's September 3, 1980, order was not appealed by McDermott and is of course not before us today.

3. These August 29 changes were: an increase in offering price from $28 to $43.50; increase in number of shares sought to provide control;

announcement of intention to effect a business combination; and other conditions.

4. At the same hearing before the district court, when Wheelabrator contended that McDermott would be given an advantage since its offer was scheduled to close earlier, the district court ordered McDermott's offer to run on the same schedule as Wheelabrator's. McDermott has

On September 22, Wheelabrator appealed to this court,[5] filing at the same time an emergency motion for stay or in the alternative to vacate the preliminary injunction and for suspension of the rules. On that day we ordered oral argument on the emergency motion and on the appeal to be heard on September 23.[6] Fed.R.App.P. 2.[7] In light of the reasons set out hereinafter, we vacate the order issued by the district court.

The prerequisites for a granting of a preliminary injunction are well–settled in this circuit. In *Fox Valley Harvestore v. A. O. Smith Harvestore Prod.*, 545 F.2d 1096 (7th Cir. 1976), we set out the criteria for a preliminary injunction and the standard we would apply to examine a district court's grant of such an injunction. We said,

> The grant of preliminary injunction is the exercise of an extremely far reaching power not to be indulged in except in a case clearly warranting it.... The universally accepted standard for the appellate test of a preliminary injunction is whether there was an abuse of discretion in granting or denying it.... The discretion exercised by the district court is measured against several prerequisites: (1) the plaintiffs have no adequate remedy at law and will be irreparably harmed if the injunction does not issue; (2) the threatened injury to the plaintiffs outweighs the threatened harm the injunction may inflict on the defendant; (3) the plaintiffs have at least a reasonable likelihood of success on the merits; and (4) the granting of a preliminary injunction will not disserve the public interest.... A

preliminary injunction is an extraordinary remedy which is not available unless the plaintiffs carry their burden of persuasion as to all of the prerequisites. *Id.* at 1097 (footnotes, citations omitted). In our review of the district court's order, we limit our analysis to the third criterion of *Fox Valley.* We must conclude that the preliminary injunction was improperly granted since it was based on an erroneous rule of law.

The district court's order can only rest upon the proposition that the announcement of the increase in the number of shares Wheelabrator obligated itself to buy created a new tender offer, thereby triggering the time requirements of the statute and regulations attendant upon the commencement of a tender offer. We conclude that this proposition is untenable, based upon our reading of the statute and regulations thereunder. Even an increase in consideration is not treated as a new tender offer. *See* 17 C.F.R. § 240.14e–1(b). It is illogical to assume that when the SEC, acting under rule–making authority granted by Congress, expressly required a ten day waiting period after a change in the consideration offered, *id.,* it intended that an increase in the number of shares sought be the commencement of a new tender offer, triggering more extensive requirements than the SEC thought necessary for a change in the price.

It is argued that the regulations treat a change in the number of shares sought as a change in information, requiring the lapse of some reasonable time thereafter during

---

not appealed this aspect of the district court's order.

**5.** Since the district court's temporary restraining order in effect compelled Wheelabrator to extend its tender offer 20 days, and in view of the extraordinary consequences of that order we are treating the order as a preliminary injunction. Fed.R.Civ.P. 65; *Sampson v. Murray,* 415 U.S. 61, 86, 94 S.Ct. 937, 951, 39 L.Ed.2d 166 (1974). The district court also certified that its order involved a controlling question of law the resolution of which would materially advance the ultimate determination of the litigation. 28 U.S.C. § 1292(b). Since we treat the order as a preliminary injunction,

we do not have to exercise our discretion granting review under 28 U.S.C. § 1292(b).

**6.** That same day we informally invited the Securities and Exchange Commission to present a memorandum of law *amicus curiae.* Such a memorandum was filed September 24, 1980.

**7.** We were prepared to take this appeal on an expedited basis since this same panel was to hear oral argument in the related case, No. 80–2071, which had been fully briefed. The panel was thus familiar with elements of this case's background. Under other circumstances, this court may well hesitate to hear such matters as expeditiously.

which the tender offer must remain outstanding. 17 C.F.R. § 240.14d–4(c). Under the order appealed from, the offer has remained open while this appeal has been pending. Assuming without deciding that the regulations require the offer to remain outstanding for a reasonable period after the announcement made the morning of September 19, we think that the period of time which has already lapsed since the order of the district court on September 19 has clearly been an adequate period. We therefore see no need to remand to the district court to fix the reasonable time under this theory.[8]

Accordingly, the order appealed from is vacated and this court's mandate shall issue forthwith.

---

PELL, Circuit Judge, dissenting.

Because I am in disagreement with the result that the majority of the panel has reached, I respectfully dissent.

The majority opinion is substantially based upon the concept that Judge McGarr considered "that the announcement of the increase in the number of shares [Wheelabrator–Frye, Inc. (WFI)] obligated itself to buy created a new tender offer." I do not read Judge McGarr's order as explicitly so stating. Instead he made it quite clear that he was not concerned with what was an amendment and what was not an amendment and what was a new tender offer and what was not a new tender offer but he was more concerned with the fact that the whole object of the regulation was the opportunity of shareholders to evaluate competing contentions.[1] On that basis he thought the short time remaining until the expiration of the WFI offer was insufficient for the making of a proper decision. Judge McGarr did think that once the time was extended, he had no discretion to deviate from the prescribed notice time which would have been applicable if there had been a new tender offer. To the extent that the majority opinion holds that the

---

**8.** Wheelabrator also questions McDermott's standing as a rival tender offeror to seek injunctive relief under the Williams Act. *Piper v. Chris–Craft Industries, Inc.*, 430 U.S. 1, 47 n.33, 97 S.Ct. 926, 952 n.33, 51 L.Ed.2d 124 (1977), *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). Since we have disposed of the merits in this case adversely to McDermott, we do not address this issue. *See also Piper v. Chris–Craft Industries, Inc.*, supra at 35–36, 97 S.Ct. at 946–47 (tender offeror's standing as a shareholder).

**1.** This is not a mere matter of disagreement over semantics but rather, it is, in fairness to Judge McGarr, that it should be made clear that Judge McGarr made no explicit finding that a "new tender offer" had been made. It is true, as the majority opinion quotes, that the trial judge at one point, long after he had announced his decision to issue his order, referred to it as "being a new offer." As will be mentioned subsequently it was, indeed, a new offer.

Much earlier statements of Judge McGarr, however, indicate the rationale of his decision to give shareholders time to consider the change in the existing tender offer. Thus,

The change here is not complex. But the circumstances and the background against which the change is made make it one which this continue to affect the shareholders' interest in the circumstance where they do not have the time because the tender offer expires at midnight to consider it, because the

Wheelabrator offer expires at midnight tonight to consider it.

My overriding concern the last time remains the same today, and that is that the whole object of regulation was not to be technical about what is an amendment and what isn't an amendment, what is a new tender and what isn't a new tender, but in every instance to use the phrase that has been bandied about here–let the marketplace decide, and let the market decide, and the opportunity to evaluate the competing contentions and determine what its own interest is. So while this new change is not material and as complex as the other one was that I consider, it is very significant as a change in terms of the interest of the shareholder. And they should have more than six hours, or how many hours they have, to decide.

I will grant the temporary restraining order sought and require an extension of ten days as the relief sought.

At a later point in the hearing, Judge McGarr stated:

And I think that the issue of control, the issue of raising the number of shares sought from a lesser number to 42 [sic 49?] percent is a sufficiently significant change to bring it within the philosophy of the regulation. And that is to afford an opportunity for the shareholders to consider it and not have to make their decision in a matter of hours without adequate information.

time frame set up by Judge McGarr's order was too long, I am in agreement.

At this point I turn to the amicus curiae memorandum of the Securities and Exchange Commission (SEC) filed the day after the oral argument in this appeal. The SEC memorandum, which is not discussed in the majority opinion, relied in its Statement of the Case on publicly available SEC filings and the briefs of the parties before the court. It is not clear whether the SEC in preparing its memorandum had before it the brief of WFI filed early in the morning two days earlier, i. e., September 22, or the answer brief of McDermott filed about 5 p. m. on September 22. I will, however, assume the SEC had the two briefs.

In any event, the SEC in its memorandum assumed that the district court had concluded that WFI's increase in the number of shares specified in its tender offer "constituted a new tender offer within the meaning of the Williams Act." The SEC, while disagreeing that it was a new tender offer, then set forth its own views as follows:

> It does not necessarily follow, however, that Wheelabrator, after announcing a material change in its tender offer on the last day of the offer, was free to permit the offer to expire that same day. While we disagree with the district court's conclusion that there was a new offer and its order that the new offer be open for 20 days, we believe that Commission Rule 14d–4(c), which requires that a "material change" in the terms of a tender offer "shall be promptly disseminated to security holders in a manner reasonably designed to inform security holders of such change," may have necessitated a brief extension of the tender offer in order to permit such dissemination.

Clearly it seems to me that the WFI offer in question did result in a "material change" in the terms of the tender offer and therefore Judge McGarr properly required a prompt dissemination "to security holders in a manner reasonably designed to inform security holders of such change." His only error in my opinion was in the determination of the length of the period of time which should follow.

The panel of this court heard this appeal on the second week day after the order was entered, with briefs being filed on the first of those week days because of the emergency aspects of the situation, and was compelled to reach a hurried decision notwithstanding unavoidable substantial alternative time commitments with which each member of the panel was confronted. We have not lived with this tender offer battle as has Judge McGarr nor do we have the expertise in the field of the governmental agency here involved. This deference, of course, is particularly applicable for determining the operation of a statute under which an agency operates.[2] In addition to other aspects creating difficulty in the proper disposition of this case, it appears WFI submitted a number of affidavits in support of its emergency motion, none of which were presented to or considered by the district court. It is difficult to tell in the hurried consideration of this case the extent to which these affidavits not properly a part of the record were influential in the decision of this court.

Judge McGarr concluded that the change proposed by WFI was not a simple amendment but a significant change in the tender offer and the offer therefore had to be extended. I agree with this conclusion. Aside from the fact that WFI was obligating itself for 2.5 million shares more than it had previously obligated itself, which fact per se would seem to have a direct bearing upon the number of shares that might be tendered, the most significant aspect is that the change of obligation from 27% to 49% of the company stock guaranteed the absolute control of Pullman, which was not true prior to the change.

2. "Interpretive regulations by officers, administrative agencies, departmental heads and others officially charged with the duty of administering and enforcing a statute, and their practices which reflect the understanding they have of provisions they are charged to carry out, have great weight in determining the operation of a statute." 2A C. Sands, *Sutherland Statutory Construction* § 49.05 at 238 (4th ed. 1973).

Judge McGarr obviously was endeavoring to apply equitable principles of fair notice for the purpose of letting the marketplace decide where its interest lay by having a reasonable opportunity to evaluate the competing contentions. In its appeal here WFI complains that the court order deprives it of the results of the decision of the marketplace. WFI displayed less concern at an earlier time in this litigation when an increase in the McDermott offer resulted in McDermott being subject to the same time requirements that are now being imposed on WFI. Finally, in exercising his equitable discretion so that the parties would be treated equally, in the September 19th order Judge McGarr simultaneously extended the McDermott offer within the same time frame applicable to WFI.

As to what the appropriate remedy should be on this appeal I again refer to the SEC brief which concludes as follows:

Where, as in this case, there is a serious question whether a tender offeror has complied with the dissemination requirements of Commission Rule 14d–4(c), we believe that ordinarily a remand to the district court would be appropriate in order that it may consider whether adequate dissemination was effected. Should the district court find, on remand, that Rule 14d–4(c) was violated, the Commission is of the view that the district court could appropriately exercise its equitable powers to require a brief extension of the tender offer so as to permit adequate dissemination of the material change to security holders and an opportunity for them to react to it. Moreover, to ensure equal treatment of tendering security holders, the court could provide proration during the extension.

In this case the district court's order opening the tender offer for an additional 20 days has, by this time, had the effect of providing such brief extension as might be required by Rule 14d–4(c). We note, however, that the district court did not require proration during that brief period to ensure that late tendering shareholders would be included. This Court should take these considerations in account in determining what remedy, if any, to direct.

The SEC in the final paragraph above appears to be of the opinion, as its brief was filed on September 24, that a five day extension of time would be adequate. It is no answer in the present case, however, to say that more than five days have expired and therefore it is appropriate for this court to vacate the district court order. The financial world is obviously aware of the fact that WFI has appealed the order and that this court has determined the appeal to be of sufficient importance to give it an unusually expedited emergency hearing. I find it inconceivable to think that the shareholders, who have existing tender offers directed to WFI, would in this posture of the litigation dare to withdraw the tendered shares with the chance of finding a day later that this court had vacated the district court's order with their having no further right to return to the tendering status. The sophisticated arbitrageurs who undoubtedly are the dominant shareholders in this tender would certainly be expected to let the status quo stand until the viability of Judge McGarr's order had been determined.

In my opinion the proper remedy of this court would have been to remand to the district court along the lines suggested by the above quoted conclusion of the SEC brief. Assuming that the district court concluded that the adequate dissemination had now been effected, perhaps only a day or two extension would now be needed to permit proration and withdrawal during the extended period of this extension. Whatever extension was determined to be appropriate should also be applicable to McDermott.