Marge S. **FISCHER**, Plaintiff,

v.

Elizabeth Hanford **DOLE**,
Secretary, Defendant.

Civ. A. No. 85–3561 Mc.

United States District Court,
D. Massachusetts.

Dec. 30, 1985.

Jonathan Shapiro, Lynn Weissberg, Stern & Shapiro, Boston, Mass., for plaintiff.

Richard Welch, Asst. U.S. Atty., Boston, Mass., for defendant.

## STATEMENT OF REASONS FOR DENIAL OF PRELIMINARY INJUNCTIVE RELIEF

McNAUGHT, District Judge.

A hearing was held on December 17, 1985 on the question whether (as plaintiff's counsel put the matter) a preliminary injunction should issue, restraining the transfer of Ms. Fischer from Region 1 NHTSA (National Highway Traffic Safety Administration of the Department of Transportation) to a position in Washington D.C., ostensibly ordered "because her relationships here are not good—friction with State officials". She brought this Title VII claim, said he, as a victim of sex discrimination, on September 16, 1985, alleging, inter alia, that adverse action had been taken against her in retaliation for her "reporting the mismanagement of federal funds" and for "blowing the whistle" (plaintiff counsel's phrase) on a State official.

On September 30th the Acting Associate Administrator notified plaintiff that she would be reassigned from her position of Highway Safety Management Specialist in Cambridge to the position of Highway Safety Specialist in Washington on December 2nd. The letter of notification of transfer contained a reference to the problem of "interpersonal relationships with the Region 1 office staff" and with "state program officials".

The plaintiff has alleged that the adverse action by her superiors has been prompted by "retaliation for past complaints of discrimination" also. It appears that she brought a complaint against her then-supervisor in 1973, and another in 1982 (in which her performance rating was the subject matter). The Secretary says that the 1982 complaint was voluntarily dismissed. In June of 1984 the plaintiff was suspended for five days without pay for violating orders, then at her request was given a "detail" or temporary assignment to Washington which lasted from October 22, 1984 to March 1, 1985. Defendant claims (and has submitted affidavits to establish) that while the plaintiff was away from Region 1, the office ran very smoothly, but that upon her return "disruptiveness reappeared". This, says defendant, is the motive for the decision that plaintiff's transfer would be in the agency's best interest.

The plaintiff, to demonstrate a likelihood of success on the merits, has argued that she was the first woman Highway Safety Specialist for NHTSA, and the only woman professional in the Region I office for twelve years; that she has been with the federal government since 1963; that her work had always been rated as highly satisfactory; that the complaints made against her by the Governor's Highway Safety Bureau director in the fall of 1983 were prompted by sex discrimination and because she reported irregularities in the Massachusetts Motorcycle Safe Riding Project. "Without fully and properly investigating the complaints, the Regional Administrator disciplined me". (Affidavit, M. Fischer, ¶ 9) "No male employee in Region I of NHTSA has ever been disciplined in any manner ..." (Aff. M.F. ¶ 13). She says that upon her return from the detail in Washington, she had her assignment changed from Massachusetts to Connecticut, and that the Connecticut highway officials are very satisfied with her work.

■ Defendant contends that there is no likelihood of plaintiff succeeding on the merits. A very large number of affidavits have been submitted, such a number that defendant found it convenient to submit a "summary of Government affidavits". To quote them by names of affiants and paragraphs would lengthen this statement of reasons unnecessarily. Suffice it to say that they support in detail the Secretary's factual contentions which follow. The nine members of the Region I office staff administer NHTSA's grant in aid programs in the New England area. Plaintiff is one of four highway safety specialists in this region at grade 13 (GS–13). She has had continuing personality clashes both with members of the NHTSA staff and state highway officials (and specific examples are cited by both male and female staff members). The person who made the ultimate decision to transfer her was a woman. The plaintiff is the only NHTSA employee to have had a serious problem with state officials. It was she who requested the temporary assignment to Washington in 1984 after her suspension for a five day period, and—finally—she is the first woman to have been transferred involuntarily. The other four were men.

It appears that the defendant has the better of the argument as to whether plaintiff has demonstrated a likelihood of succeeding on the merits. Of equal importance are my conclusions that (1) plaintiff has not demonstrated irreparable harm in the event of denial of the injunctive relief requested, and (2) the public interest is best served by denial of the motion.

■ Ms. Fischer contends that the "irreparable harm" arises from the facts that she has served the government for a lengthy period of time, and that she is "settled" in this area. If she is transferred to a city four hundred twenty-five miles away, she will have to effect a change of housing. (Indeed, if she expects to prevail in this case, and then does so, she may decide now reasonably that she should maintain her housing "presence" here, while she rents there, so that when a judg-

ment is rendered in her favor, she can return to her "old" home.) She will be living in a different climate, moving away from her "old" friends and co-workers and will have her present social life disrupted. Her complaints are serious and must be taken seriously. These, however, are complaints that could be registered by *any* government employee transferred from one location to another.

On the other hand, is the threatened "damage" irreparable? On a prior occasion she requested at least a temporary transfer to the District Of Columbia. Indeed, it appears to be conceded that she said that she would be willing to make the permanent change provided that she received a one grade promotion. Perhaps her resistance is a matter of a desire for a raise in pay. Additionally, this government employee, upon accepting her employment knew or should have known of the possibility of eventual transfer to another location "for the good" of the Department. If she is transferred and eventually prevails in this action, she would have had to live in another area (the same area she lived in from October of 1984 to March of 1985 willingly) pending the trial of this action only.

The decision of the Supreme Court in the case of *Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) cautions us that a District Court judge, when considering the possibility of issuing an injunction against the government in a case of this sort must consider the disruptive effect that preliminary relief will have on the government, which should have the widest latitude possible in handling its own internal affairs. 415 U.S. at 83, 94 S.Ct. at 949, citing *Cafeteria Workers v. McElroy*, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). *Sampson* involved the issuance of a temporary restraining order against the discharge of an employee—a difference in factual pattern, it is true—but the principles are equally applicable here. "... (R)espondent (here the plaintiff) at the very least must make a showing of irreparable injury sufficient in kind and degree to over-

ride those factors cutting against the general availability of preliminary injunctions in Government personnel cases". 415 U.S. at 84, 94 S.Ct. at 950.

The government has determined that the Region I office will operate more efficiently without the plaintiff's presence and that the anticipated transfer of Ms. Fischer to the same office and post in Washington where she has heretofore functioned efficiently will be to the benefit of the Washington office. Weighing the inconvenience (and it is a serious inconvenience as stated hereinbefore) against the interests of the government and the public, I conclude that the latter outweighs the harm to Ms. Fischer if I deny the injunctive relief. Loss of money and potential damage to reputation to plaintiff were held to be insufficient in *Sampson*, supra. The factors which plaintiff here asks us to consider are not enough either.

For the foregoing reasons, the request for preliminary injunctive relief is denied.