**FRONTLINE MEDICAL ASSOCIATES, INC.**

v.

**COVENTRY HEALTHCARE WORKERS COMPENSATION, INC., et al.**

No. CV 09–3274–GHK (AGRx).

United States District Court, C.D. California.

June 3, 2009.

Attorneys Present for Plaintiffs: None.

Attorneys Present for Defendants: None.

**Proceedings: (In Chambers) Amended Order[1] re: Plaintiff's *Ex Parte* Application for Temporary Restraining Order and OSC re: Preliminary Injunction**

GEORGE H. KING, District Judge.

This matter is before the Court on Plaintiff Frontline Medical Associates, Inc.'s ("Plaintiff") *Ex Parte* Application for Temporary Restraining Order and OSC re: Preliminary Injunction ("Application") against Defendants Coventry Healthcare Workers Compensation, Inc., First Health Group Corp., and Focus Healthcare Management, Inc. (collectively "Defendants"). We have considered the papers filed in support of and opposition to this Application, and we deem this matter appropriate for resolution without oral argument. L.R. 7–15. As the parties are familiar with the facts of this case, we will repeat them only as necessary. Accordingly, we rule as follows.

■ The standard for a temporary restraining order ("TRO") and a preliminary injunction are the same. *Lockheed Missile & Space Co. v. Hughes Aircraft Co.,* 887 F.Supp. 1320, 1323 (N.D.Cal.1995). The movant must establish: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. NRDC, Inc.,* — U.S. ——, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008).

■ A plaintiff seeking an injunction must demonstrate that irreparable harm is likely, not just possible. *Winter,* 129 S.Ct. at 375–76. Here, Plaintiff alleges that Defendants' act of removing Plaintiff from their medical provider networks ("MPNs") will cause Plaintiff irreparable harm to its business and reputation. Regarding harm to Plaintiff's business, Plaintiff states that Defendants account for approximately 41% of Plaintiff's overall revenue. (Application, 10.) Plaintiff cites no authority holding that such an economic harm is irreparable. Indeed, the "'possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.'" *Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) (quoting *Virginia Petroleum Jobbers Ass'n v. Fed. Power Com.,* 259 F.2d 921, 924 (D.C.Cir. 1958)). Plaintiff additionally states without explanation or proof that the "decline in revenue and patient volume creates imminent threat to Plaintiff's continued operations." (Reply, 4.) However, Plaintiff provides no explanation of that threat, such as whether Plaintiff is threatened with bankruptcy and how soon it is likely to occur. Therefore, Plaintiff has not adequately shown that it is likely to suffer irreparable harm from the loss of revenue from Defendants. Plaintiff further alleges that another MPN operator has removed Plaintiff solely because it followed Defendants' lead. Again, this creates an economic harm that can be compensated if Plaintiff prevails at trial. Thus, Plaintiff has not shown an irreparable harm on this basis.

■ Regarding harm to reputation, Plaintiff alleges that it is required to notify any beneficiary of Defendants' MPNs that Plaintiff is no longer a member of those MPNs. We do not see how notifying a patient that Plaintiff is no longer a member of an MPN causes harm to reputation, as distinct from the compensable economic harm of losing the patient. Plaintiff further alleges that "word will spread throughout the workers' compensation in-

---

**1.** This Amended Order makes no substantive changes to our May 18, 2009 Order.

dustry that [Plaintiff] has been removed from [Defendants'] MPNs based on what [Defendants] termed 'unauthorized treatments.'" (Application, 12.) First, the mere fact that Plaintiff has been removed from Defendants' MPNs does not itself affect Plaintiff's reputation. Moreover, even if we were to view Defendants' allegations that Plaintiff engaged in "unauthorized treatments" as affecting Plaintiff's reputation, the injunctive relief sought will not abate any harm to Plaintiff's reputation. In other words, even if we were to require Defendants to maintain Plaintiff on their MPNs pending resolution of this action, the allegations of malfeasance which arguably affect Plaintiff's reputation will remain.

■ Because Plaintiff has not demonstrated a likelihood of irreparable harm, we need not reach the other elements. However, we do note that the Application states that considerations of patient health and continuity of care require granting the Application. (Application, 8.) Even if we were to consider this as part of the public interest inquiry, we reject this bald and unsupported assertion. Plaintiff states that patients are being unilaterally removed from Plaintiff's care and redirected to other physicians. (Decl. Turley, ¶ 14.) However, Plaintiff does not explain how those patients are harmed by this redirection. Indeed, Plaintiff provides a letter sent by Defendants to a beneficiary, and the letter states that Defendants will authorize Plaintiff to temporarily continue care for beneficiaries whose medical conditions meet certain criteria. (Decl. Turley, Ex. H.) Thus, Plaintiff has not adequately shown that the public will be harmed if the TRO does not issue.

Therefore, we **DENY** Plaintiff's Application as it relates to a TRO. We exercise our discretion to decline to issue an order to show cause re: preliminary injunction. If, after considering our comments above,

Plaintiff wishes to bring a properly noticed preliminary injunction motion, it **SHALL** comply with Local Rule 7–3, notwithstanding that Rule's exemption of motions for preliminary injunctions.

**IT IS SO ORDERED.**